# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:98-CR-351 RLW |
| ) | |
| GERALD CARROLL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Defendant Gerald Carroll ("Carroll") through the Office of the Federal Public Defender filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion") (ECF No. 186), asking the Court to enter an Order reducing his sentence to time served. The Government opposes Carroll's Motion (ECF No. 196).  The United States Probation Office states that "[d]ue to the age of the inmate and the extraordinary and compelling reasons outlined above, it appears Carroll is eligible for consideration for a compassionate release pursuant to the First Step Act."  (ECF No. 190).

For the reasons that follow, Carroll's Motion is granted.  Carroll's sentence is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), and he shall be immediately released from the custody of the United States Bureau of Prisons.  Upon his release, Carroll shall be subject to the conditions imposed in the Amended Judgment to be entered by the Court, including a new special condition of location monitoring.  All other aspects of Carroll's sentence remain unchanged.

   I.      BACKGROUND

The Presentence Investigation Report ("PSR") states that Carroll was born to Lloyd E. Carroll and Gracie Johnson, who divorced while Gracie was a teenager.  Ms. Johnson had two

other sons, including Carroll's older brother, Kevin.  The year Carroll turned 13, his father died of a heart attack at age 34.  Carroll attended Vashon High school through the eleventh grade but was convicted of manslaughter and robbery, committed with three other juveniles, in 1975 when he was 16 years old.  While serving his sentence, he obtained his G.E.D. from the St. Louis Community College and completed an Associate of Arts Degree and an Associate of General Education degree.  (ECF No. 190 at 3.)

Carroll was convicted of a 1988 armed bank robbery in which no one was injured and was sentenced to 46 months in prison plus a consecutive 60 months for possessing a firearm in relation to the bank robbery under 18 U.S.C. § 924(c).  After commencing supervised release from that sentence, he worked with the Roles Company as an Electronics assemblyperson.  (Id.)

On August 3, 1998, the Government charged brothers Kevin Carroll ("Kevin") and Gerald Carroll with Armed Bank Robbery of the St. Louis Community Credit Union in University City, in violation of 18 U.S.C. § 2113(a), and using or carrying a firearm in relation to that offense, in violation of 18 U.S.C. § 924(c).  The PSR states that Kevin disarmed a security guard and then he and Carroll obtained money in bags from a teller.  They ran to Kevin's car across the parking lot, but dye packs exploded in the moneybags.  Police chased their car and ultimately the brothers fled on foot.  Carroll exchanged gunfire with police before submitting to arrest.  Fortunately, no one was harmed during the robbery or in the subsequent exchange of gunfire.

The Government filed notice that it would trigger a mandatory life prison term for the robbery using the three strikes law, 18 U.S.C. § 3559(c).  The charge depended on the 1988 federal bank robbery, which was an enumerated predicate strike under the statute, and on Carroll's 1975 robbery at age 16, in the City of St. Louis.

The Government's decision to apply Section 3559(c) changed the statutory penalty range from a maximum of 20 years for the bank robbery charge, 18 U.S.C. § 2113(a), to mandatory life

without parole for that count. But for that prosecutorial choice, the sentencing guidelines would have used a base offense level of 20 for Count 1, and added two levels for taking a financial institution's property, one level for taking the guard's gun, two levels for a loss exceeding $50,000, and three levels for the risk of serious injury to police during flight, for a Total Offense Level of 28. These specific offense levels were trumped, however, by a Career Offender finding based on Carroll's teenage robbery conviction and the 1988 bank robbery conviction, increasing the offense level to 34. Standing alone, Carroll's prior convictions generated a total of 12 Criminal History points, putting him in Criminal History Category V, where offense level 34 carried a guideline range of 235-293 months. The Career Offender designation compelled application of Criminal History Category VI, where offense level 34 ordinarily carried a term of 262-327 months, but the statutory maximum of 20 years would make the guideline term for the bank robbery 240 months. Count Two required a mandatory consecutive term of 20 years as a second conviction under 18 U.S.C. § 924(c) (1998). The Court, the late Honorable Donald J. Stohr presiding, imposed the life sentence on count one and the consecutive 20-year sentence mandated by the 1997 version of Section 924(c) for Count Two, with a five-year supervised release term.

Carroll sought and was denied relief under Johnson v. United States, 135 S. Ct. 2551 (2015), in this Court in a civil action brought under 28 U.S.C. § 2255. See Carroll v. United States, No. 4:16-CV-688 RLW (E.D. Mo. June 22, 2016). In the Memorandum and Order and accompanying Order of Dismissal, the Court explained that it lacked jurisdiction over Carroll's § 2255 action because his petition was a second or successive application for relief in the District Court that had not been authorized by the Eighth Circuit Court of Appeals. See 28 U.S.C. § 2244(h).

On May 27, 2016, Carroll filed a motion in the Eighth Circuit for permission to file for successive habeas relief based on the Supreme Court's decision in Johnson. The Eighth Circuit appointed the Office of the Federal Public Defender to represent Carroll. The United States opposed the motion and the Eighth Circuit issued its Judgment denying Carroll authorization to file a successive habeas petition on October 31, 2016. See Carroll v. United States, No. 16-2444 (8th Cir. 2016).

On April 22, 2019, Carroll, represented by the Federal Public Defender, filed a second motion for permission to file a successive habeas petition. In the second motion, Carroll argued the Supreme Court's holding in Sessions v. Dimaya, 138 S. Ct. 1204 (2018), that the residual clause defining "crime of violence" under 18 U.S.C. § 16(b) is void for vagueness, dictated that the residual clauses in § 924(c) and the three-strikes law in 18 U.S.C. § 3559(c)(2)(F) were similarly void. Carroll argued that after Dimaya, his 1975 Missouri convictions for robbery and manslaughter did not constitute predicate serious violent felonies under 18 U.S.C. § 3559(c)(2). Specifically, Carroll asserted that his state court conviction was entered on the lesser offense of "unarmed robbery" and that his Missouri manslaughter conviction did not qualify categorically as a serious violent felony. Carroll also sought to raise that his conviction under 18 U.S.C. § 924(c) is invalid under United States v. Davis, 139 S. Ct. 2319 (2019), because it is based on federal bank robbery. Carroll therefore asserted he was entitled to file for successive habeas seeking relief from his sentence.

The Eighth Circuit held Carroll's second motion in abeyance pending a decision by the Supreme Court in United States v. Davis on the issue of whether the residual clause in 18 U.S.C. § 924(c) was unconstitutionally vague. On June 24, 2019, the Supreme Court held that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. Davis, 139 S. Ct. at 2336. The Government opposed Carroll's motion and Carroll filed a reply brief in support. The Eighth Circuit issued its

4

Judgment denying Carroll authorization to file a successive habeas petition on March 11, 2020. See Carroll-Bey v. United States, No. 19-1819 (8th Cir. Mar. 11, 2020).  As a result, this Court was required to deny for lack of jurisdiction Carroll's pro se "Petition for Resentencing Pursuant to Title 18 U.S.C. § 3559(c)(7) When a (Prior) Basis for Sentencing is Found to be Unconstitutional" (ECF No. 174).  See Mem. and Order of June 9, 2020 (ECF No. 183).  Thus, no court has ever reached the merits of Carroll's claims under Johnson, Dimaya, and Davis.

Carroll, who is now 61 years old, suffers from Type 2 diabetes mellitus with peripheral neuropathy and high blood pressure, for which he takes Metformin and Lisinopril.  Federal Bureau of Prisons ("BOP") medical records submitted with Carroll's Motion show he was diagnosed with diabetes in 2013, and his diabetes is poorly controlled with elevated A1C (blood sugar) levels.  Carroll has been prescribed diabetic shoes due to numerous foot problems related to the illness.  He has also been diagnosed with hyperlipidemia for which he takes Atorvastatin 20mg, ongoing atypical non-exertional chest pains, rectal bleeding,[1] Benign Hypertrophy of Prostate for which he takes Tamsulosin HCI, chronic anemia, and ongoing vision problems, including glaucoma, astigmatism, and presbyopia, among other complaints.  These conditions have been addressed while Carroll has been in BOP custody and he appears to have generally received proper care.

The Centers for Disease Control and Prevention currently advises that people of any age with Type 2 diabetes mellitus are at increased risk of severe illness from COVID-19, and people with hypertension or high blood pressure might be at an increased risk for severe illness from COVID-19.[2]

---

[1] BOP health care providers recommended in December 2019 that Carroll have a colonoscopy and an upper endoscopy, also known as esophagogastroduodenoscopy (EGD), because of his history of rectal bleeding.  (ECF 186-1 at 13.)  There is no indication in the medical records that Carroll has had these recommended procedures.

[2] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

Carroll asserts in his Motion that his vulnerability to COVID-19 in the prison environment constitutes an extraordinary and compelling reason for compassionate release, based on his age and health conditions, in particular his Type 2 diabetes, high blood pressure, hyperlipidemia, and family history of heart attack,[3] all of which all of which put him at high risk of more serious illness from COVID-19.  Carroll asserts that social distancing is impossible in his small cell and many prisoners around him do not use their prison-issued face mask.  Carroll states he has served over 22 years for a 1998 bank robbery pursuant to a three-strikes mandatory minimum life term under 18 U.S.C. § 3559(c), predicated on a Missouri robbery at age 16 with other juveniles, 45 years ago.

## II.    DISCUSSION

Carroll moves for release under 18 U.S.C. § 3582(c)(1)(A).  As amended by the First Step Act, Section 3582(c)(1)(A) authorizes the Court to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

---

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 12, 2020).

[3] In addition to his father's death of a heart attack at age 34, Carroll's paternal grandmother died of a heart attack at age 57.

To be entitled to relief under the statute, Carroll must meet both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses these requirements in turn.

A. Exhaustion

Section 3582(c)(1)(A) imposes a statutory exhaustion requirement. On April 12, 2020, Carroll submitted his request for reduction in sentence with the Warden of USP Coleman I, in Coleman, Florida. The request was denied May 18, 2020. The United States concedes that Carroll has administratively exhausted his claim and his Motion is properly before the Court for determination. (ECF No. 196 at 2.)

B. Extraordinary and Compelling Reasons for Release

Section 3582(c)(1)(A) authorizes courts to reduce a sentence for "extraordinary and compelling reasons," but only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress has not defined "extraordinary and compelling reasons" except to state that "rehabilitation alone" does not suffice. 18 U.S.C. § 944(t) (cleaned up). The Sentencing Commission was authorized to define the term and it did so before enactment of the First Step Act, which amended section 3852(c)(1)(A) to, among other things, allow inmates to petition courts directly for compassionate release, and eliminate the BOP's previously exclusive "gatekeeper" role. See United States v. Rodriguez, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

Section 1B1.13 of the Sentencing Guidelines states that a sentence reduction under section 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

In subsections (A)-(C) of the Application Note to section 1B1.13, the Commission identified three "reasons" that meet the "extraordinary and compelling" standard of section 3582(c)(1)(A):  (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances.  See id. cmt. n.1(A)-(C).  The policy statement also has a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."  Id. cmt. n.1(D).

The only provision of the amended statute that would allow Carroll to be released is if the Court finds "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The statute also provides–as it did before the passage of the First Step Act– that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  These portions of § 3582 existed before the First Step Act and were not changed by that law.

The Government argues that Carroll does not meet the statutory standards and cannot show the reasons listed in the policy statement issued by the sentencing commission.  Sentencing Guideline section 1B1.13 and its Application Note 1 have not been amended to reflect the changes made by the First Step Act, because the United States Sentencing Commission has not had a quorum since the passage of the Act.  Guidelines Section § 1B1.13 is inconsistent with the

8

amended statute because it requires the Director of the BOP to make a motion for compassionate release. Application Note 1 is inconsistent with the new law because its list of specific reasons that could justify compassionate release (medical condition, age, family circumstances) are not required by the statute and its catch-all "other reasons" subsection requires the Director of the BOP to determine what are "extraordinary and compelling" reasons. For this reason, many courts have found that the guideline does not limit the factors a court may consider but instead merely provides helpful guidance of some factors. See, e.g., United States v. Schaffer, 4:16-CR-426 CDP, slip op. at 4-5 (E.D. Mo. May 5, 2020); United States v. Brown, 2020 WL 2091802 at *5-6 (S.D. Iowa Apr. 29, 2020); United States v. Marks, 2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020); United States v. Resnick, 2020 WL 1658508 (S.D.N.Y. Apr. 2, 2020); United States v. Schmitt, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020); United States v. Urkevich, 2019 WL 6037391 (D. Neb. Nov. 14, 2019).

In addition, courts have concluded that the history of § 603 of the First Step Act along with its title, "Increasing the Use and Transparency of Compassionate Release," shows Congress intended to liberalize the use of compassionate release, and to accomplish that purpose courts cannot be limited to the same restrictive list that previously limited the BOP. See Schaffer, 4:16-CR-426 CDP, slip op. at 5; Marks, 2020 WL 1908911, at *5; Brown, 2020 WL 2091802, at *7. This Court concurs that while the guideline and its application note can provide helpful guidance, they do not limit the factors a district court can consider.

Medical records from the BOP show Carroll suffers from poorly controlled Type 2 diabetes mellitus with peripheral neuropathy, high blood pressure, hyperlipidemia, ongoing atypical non-exertional chest pains, rectal bleeding, and Benign Hypertrophy of Prostate, among other conditions. The records also show Carroll's most recent BMI is 29.28 (ECF 186-1 at 32),

9

which is just outside of the CDC's definition of obesity (body mass index [BMI] of 30 or higher).[4] Obesity is another underlying condition the CDC states causes persons to be at increased risk of severe illness from COVID-19.[5] Thus, Carroll establishes he has at least one underlying medical condition, Type 2 diabetes mellitus, that causes him to be at increased risk of severe illness from COVID-19, and other medical conditions that may cause him to be at increased risk. This constitutes an extraordinary and compelling reason to warrant a sentence reduction in the context of the COVID-19 pandemic and Carroll's incarceration.[6]

Defendant is incarcerated at USP Coleman I. As of September 12, 2020, 33 inmates and 30 staff member have active cases, 34 inmates and 2 staff are listed as recovered, and there have been no inmate or staff deaths.[7] Despite the BOP's significant efforts at mitigation and containment, it appears Carroll is objectively at significant risk of contracting the disease and cannot engage in adequate social distancing behavior in the institutional environment. According to public health experts, social distancing measures are the most effective way to combat the rapid spread of COVID-19 and prevent illness. "Limiting close face-to-face contact with others is the best way to reduce the spread of coronavirus disease 2019 (COVID-19). . . . Social distancing is

---

[4] See note 2, *supra*.

[5] See note 2, *supra*.

[6] A number of cases have stated that the Department of Justice issued a directive on May 1, 2020, under which the Department of Justice nationwide is to concede that extraordinary and compelling circumstances exist where a defendant has an underlying medical condition the CDC believes creates an increased risk of severe illness if COVID-19 is caught. See United States v. Medlin, 2020 WL 4016427 (M.D. Tenn. July 15, 2020) (citing Wise v. United States, 2020 WL 2614816 (D. Md. May 22, 2020) ("the Department of Justice [has now officially] adopted the position that any inmates who suffer from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release."); United States v. Wright, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) ("The Government now agrees, based on recent Department of Justice guidance, that Wright's diabetes condition, and perhaps other medical conditions she presently has, could constitute "extraordinary and compelling reasons" under the circumstances of the COVID-19 pandemic.")).

[7] Federal Bureau of Prisons, Coronavirus COVID-19, https://www.bop.gov/coronavirus/ (last visited September 12, 2020).

especially important for people who are at higher risk for severe illness from COVID-19."[8] Unfortunately, in the context of institutional confinement, social distancing can be nearly impossible to implement and follow, given the large numbers of inmates held together in crowded, closed facilities. In light of this reality, courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons "is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." See Basank v. Decker, 449 F.Supp.3d 205, 211 (S.D.N.Y. 2020); see also United States v. Harris, __ F.Supp.3d __, 2020 WL 1503444, at *2 (D.D.C. Mar. 27, 2020).

The Court finds these factors considered together constitute an extraordinary and compelling reason to reduce Carroll's sentence. Recently, many courts have granted motions for compassionate release for reasons based on the COVID-19 public health crisis. See Brown, 2020 WL 2091802, at *7-9 (approving compassionate release based on factors including extraordinary rehabilitation, sentencing disparity under 18 U.S.C. § 924(c), and high risk for COVID-19 based on factors of low white blood cell count and hypertension); United States v. Gonzalez, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable" to COVID-19); United States v. Hernandez, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (finding "extraordinary and compelling reasons" to reduce the defendant's sentence due to defendant's asthma and the "heightened medical risk presented to [the defendant] by the COVID-19 pandemic"); Rodriguez, 2020 WL 1627331, at *2 (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"); United States v. Campagna, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's

---

[8] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Social Distancing, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited September 12, 2020).

compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC.").

Accordingly, the Court finds that Carroll has demonstrated extraordinary and compelling reasons justifying his release.

### C. Other Considerations

Section 1B1.13 of the Sentencing Guidelines further provides that a court may reduce a term of imprisonment only if it determines that "[t]he defendant is not a danger to the safety of any other person or to the community[,]" U.S.S.G. § 1B1.13(3), and only after it considers the factors set forth in 18 U.S.C. § 3553(a).

The Court considers whether Carroll presents "a danger to the safety of any other person or to the community[.]"  U.S.S.G. § 1B1.13(2).  Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).

Applying these factors in this case, the Court cannot conclude that Carroll poses no risk at all to public safety—based on the nature and circumstances of his offenses, the weight of the evidence introduced at trial, and his lengthy criminal history involving similar offenses.  However, given Carroll's age, serious health problems, the substantial amount of time he has already served, and his positive prison record,[9] factors which are now a part of his history and characteristics, the

---

[9] The Court places significant weight on Carroll's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics.'" Pepper v. United States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  Despite being incarcerated on a life sentence, Carroll has sought to better himself by taking numerous classes and completing many hours of courses in computer and

Court finds the risk of Carroll engaging in further criminal conduct is minimal and can be managed through the terms of his supervised release.  See 18 U.S.C. § 3142(g) (stating that conditions of release can mitigate danger to the community).  More specifically, Carroll will be placed on supervised release for five years, including a new special condition of 120 days of location monitoring, and the standard and special conditions previously imposed will result in substantial oversight by the United States Probation Office.  See Judgment (ECF No. 112 at 3-4).  With appropriate supervision, the Court concludes that Carroll will not be "a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."  See U.S.S.G. § 1B1.13(2).

Carroll has a release plan to live with his mother, Gracie Johnson, in her three-bedroom house in St. Louis, with two additional rooms in the basement where he can self-isolate and quarantine upon release.  Carroll should be able to, as permitted, support himself resuming his work as an audio technician and Electronic Bench Technician, including hearing aid repair.  Carroll expects he will be able to pay for his own health insurance, and his mother and son are ready to assist him.  The Probation Office conducted a telephone interview with Ms. Johnson, who stated she is willing to accommodate unannounced home visits from the Probation Office,to have a firearm removed from the house, and to sign resident search acknowledgements, agreeing to a search of the residence if there was reasonable suspicion to believe that Carroll was involved in criminal activity.  The Probation Office approved Carroll's home plan.

---

keyboarding skills, and classes on business, financing, marketing, real estate practice, and personnel administration.  (ECF No. 186-2 at 1, 5.)  He has taken self-improvement training in anger management, "right thinking," and good parenting.  (Id.)  Although Carroll has incurred citations for non-compliance with prison rules, he has had no write-ups since 2015.  (Id. at 15.).  The write ups he did receive are primarily minor examples of misconduct.

Finally, the Court finds that the factors listed in 18 U.S.C. § 3553(a) weigh in favor of Carroll's resentencing to time served.  Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here.  The applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ... [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

Here, there is no doubt that Carroll's 1998 offenses of conviction—armed robbery of a federally insured credit union, and use of a firearm during a crime of violence—were very serious.  The seriousness of those offenses is compounded by the fact that Carroll committed them at a mature age after a prior conviction for armed bank robbery in 1988 and a teenage conviction for manslaughter and robbery, which resulted in terms of imprisonment that failed to deter him from continuing the same criminal conduct.  But the prior offenses occurred 32 and 45 years ago, and Carroll has been in BOP custody for over 22 years, much of it in declining health.  That is a significant sanction.  As previously noted, Carroll's prison record has been positive.  Once released, Carroll will be on supervised release for five years, including 120 days of location monitoring, which will serve as continued sanctions and general deterrents.  For the reasons

already discussed, the Court finds that these additional sanctions will protect the public from the risk of future crimes by Carroll.

The sentence imposed must serve the enumerated purposes of punishment. Id. § 3553(a)(2). The court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes." Id. § 3553(a). Carroll has been incarcerated since 1998. The Court notes the contrast between Carroll's sentence of life imprisonment and the average sentences imposed on defendants convicted of robbery and other serious crimes, and concludes his early release will not create any meaningful sentence disparities. Statistics compiled by the United States Sentencing Commission, for example, show that for fiscal year 2019, the average national sentence imposed for the crime of robbery is 109 months (9 years plus 1 month); for murder, 255 months (21 years, 4 months); for child pornography, 103 months (8 years, 7 month); and for "Extortion/Racketeering," 32 months (2 years, 8 months). The 22-year sentence Carroll has served is long enough to reflect the seriousness of his offenses, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from his crimes. To prolong Carroll's incarceration further would be to impose a sentence "greater than necessary" to comply with the statutory purposes of punishment, particularly where to do so presents a serious danger to his health and possibly his life. Further, Carroll has a significant restitution obligation that he can work toward paying off if he is not incarcerated.

As to Carroll's current history and characteristics, the Court has found that the severity of his physical conditions weighs in favor of a reduction in sentence. Releasing Carroll also will serve the interest of providing him with the most effective medical care. The Eighth Amendment guarantees inmates in BOP custody the right to adequate medical care for a serious medical need. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Estell v. Gamble, 429 U.S. 97, 103-05 (1976).

15

It does not require the BOP to provide optimal medical care or the care of an inmate's choosing. Here, the record indicates that Carroll has received appropriate care from the BOP to date. However, a reduction of Carroll's sentence will enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the threat that COVID-19 poses in the institutional environment. He has a place to live and a mother and son to help support him and assist him in obtaining medical care, and the United States Probation Office in this District will supervise him and provide structure and support through its numerous programs designed to facilitate reentry into society.

On balance, the Court concludes that the applicable § 3553(a) factors support Carroll's request for a reduction in sentence.

### III. CONCLUSION

For the foregoing reasons, Carroll's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be granted. Carroll's sentence is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), and he shall be immediately released from custody. Upon his release, Carroll will be subject to the conditions of supervision for a period of five years on terms previously imposed, with the additional special condition of 120 days of location monitoring as will be set forth in the amended judgment to be entered by the Court. All other aspects of Carroll's sentence remain unchanged.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Gerald Carroll's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**. (ECF No. 186)

**IT IS FURTHER ORDERED** that Defendant Gerald Carroll's sentence is reduced to time served, with five (5) years supervised release on terms previously imposed, with the additional special condition of a 120-day period of electronic location monitoring. The sentence

will be effective immediately and Mr. Carroll shall be immediately released from the custody of the Bureau of Prisons.  An Amended Judgment will be issued separately.

**IIT IS FURTHER ORDERED** that upon his release from the custody of the Federal Bureau of Prisons, Carroll must begin serving the 120-day term of electronic location monitoring and the five (5) year term of supervised release previously imposed.

**IT IS FINALLY ORDERED** that the Clerk shall provide a copy of this Order to the Probation Office and to the Bureau of Prisons.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 14th day of September, 2020.